UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT WHEELER                                            CIVIL ACTION

VERSUS                                                    NO. 16-8141

TRANSOCEAN OFFSHORE, USA. INC., ET AL.                    SECTION A(2)


**ORDER AND REASONS**

Before the Court is a **Motion for Partial Summary Judgment (Rec. Doc. 33)** submitted by Defendants: Schlumberger Technology Corporation ("Schlumberger"), Freeport-McMoran Oil & Gas LLC ("Freeport"), and Transocean Offshore Deepwater Drilling, Inc. ("Transocean") (collectively referred to as "Defendants"). Plaintiff Robert Wheeler opposes this motion (Rec. Doc. 35) and Defendants have replied (Rec. Doc. 39). The motion, set for submission on August 23, 2017, is before the Court on the briefs without oral argument. Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the Defendants' motion should be **GRANTED** for the reasons set forth below.

**I.     Background**

This case arises out of injuries allegedly sustained by Plaintiff Robert Wheeler on July 7, 2014. At the time, Plaintiff was employed with Schlumberger as a Jones Act seaman in his capacity as a compliance engineer aboard the drill ship M/V Deepwater Champion ("Deepwater Champion"). The Deepwater Champion, owned and operated by Transocean, was performing mining operations for Freeport. (Rec. Doc. 1).

According to his complaint, Plaintiff sustained injuries to his neck and left shoulder when he slipped and fell in a shower of the Deepwater Champion. Following the accident, Plaintiff

stayed aboard the Deepwater Champion to finish his hitch and returned to shore approximately two days later. As a result of the shower incident, Plaintiff alleges he suffered a torn left rotator cuff requiring multiple surgeries, as well as injuries to his neck. Plaintiff contends that the accident was the result of negligence attributable to the Defendants, and asserts causes of action for Jones Act negligence, unseaworthiness, and maintenance and cure.

Defendants have filed the current motion pursuant to Federal Rule of Civil Procedure 56 asking that partial summary judgment be granted as to Plaintiff's maintenance and cure claims. Defendants assert that Plaintiff is not entitled to maintenance and cure benefits, related claims for punitive damages, or attorney's fees pursuant to the doctrine set forth in *McCorpen v. Central Gulf S.S. Corp.*, 396 F.2d 547 (5th Cir. 1968).

According to Defendants, the Court should grant this motion because: (1) Plaintiff concealed medical information at the time of his hiring and physical examination; (2) the withheld information was material to Schlumberger's decision to hire Plaintiff; (3) a nexus exists between Plaintiff's pre-existing conditions and the alleged injuries that make the basis of this lawsuit; and (4) there are no genuine issues of material fact which would preclude the Court from granting summary judgment.

## II. Legal Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

(citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### III. Law and Analysis

Defendants contend that Plaintiff's shoulder and neck injuries allegedly caused by the shower incident were in fact pre-existing his employment. Moreover, Defendants assert that Plaintiff failed to reveal these pre-existing conditions because he believed revealing such injuries would deter his employer from hiring him. In support of this position, Defendants refer to several procedures, complaints, accidents, injuries, doctor's visits, and diagnoses that attempt to show Plaintiff had pre-existing injuries to his neck and left shoulder. In particular, Defendants show that several months before submitting his employment application, Plaintiff underwent a left shoulder injection. Moreover, several weeks before the application process, Plaintiff complained to his physician of neck problems. The record shows that Plaintiff had several ailments affecting different parts of his body, including his neck and left shoulder, prior to his employment with Schlumberger. (*See* Rec. Doc. 33-3, pp. 10-12 (referencing Plaintiff's relevant medical history)).

A. Application of the *McCorpen* Defense

Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel. *McCorpen*, 396 F.2d at 548. The vessel owner's obligation to provide this compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment. *Id.* A seaman may recover maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed. *Id.*

A Jones Act employer is entitled to investigate a seaman's claim for maintenance and cure benefits. *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) (citing *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987)). An employer is allowed to rely on certain legal defenses to deny these claims, such as the defense that the injured seaman willfully concealed a pre-existing medical condition from his employer. *Id.* (citing *McCorpen*, 396 F.2d 547 (5th Cir. 1968)). "[W]here the [employer] requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." *Id.* at 173 (citing *McCorpen*, 396 F.2d at 549).

To prevail on the *McCorpen* defense, "an employer must show that (1) the claimant intentionally misrepresented or concealed medical facts; (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and (3) a connection exists between the withheld information and the injury complained of in the lawsuit." *Brown*, 410 F.3d at 171 (citing *McCorpen*, 396 F.2d at 548-49).

1. Intentional Concealment

In cases involving a pre-existing illness or other disability, the courts have made a distinction between nondisclosure and concealment. *McCorpen*, 396 F.2d at 548-49. On one hand, where the shipowner does not require a pre-employment medical examination or interview, the rule is that a seaman must disclose a past illness or injury only when in his own opinion the shipowner would consider it a matter of importance. *Id.* On the other hand, where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure. *Id.*

This case falls within the latter category. According to their corporate representative, Cesar Guiterrez, Schlumberger's pre-hiring medical examination was extensive. Specifically, it involved "a series of questions that the [candidate] will have to answer to the physician that is conducting the testing, including any medical conditions at the time." (Rec. Doc. 35-6, p. 41).

Plaintiff relies on the fact that his employment application did not contain any questions regarding his medical condition. (Rec. Doc. 35, p. 10). However, the record shows that the employment application was only the first step in a multi-step hiring process. In particular, Plaintiff underwent a Physical Examination. (Rec. Doc. 33-4, p. 27). During this examination, Plaintiff denied any significant past medical history. *Id.* Moreover, the physician's assistant who conducted the examination, Michael Benoit, swore by affidavit that "[Plaintiff] denied any medical issues for which he had been treated medically." (Rec. Doc. 33-4, p. 68). Benoit also stated that Plaintiff particularly denied any past ailments regarding his neck, back, extremities, and spine. *Id.*

Plaintiff argues that he does not recall Benoit asking questions about his conditions. When questioned about the incident during his deposition, Plaintiff states the following:

5

Q: [D]o you remember [Benoit] asking you questions about . . . your condition?

A: I don't remember. No.

Q: I mean, it did happen?

A: Well yeah. I mean, obviously it happened. I don't remember.

(Rec. Doc. 35-1, pp. 34-35).

Plaintiff relies on his vague recollection of the event to combat the notion that he concealed pre-existing conditions. However, as shown above, Plaintiff concedes that he was asked questions about his pre-existing conditions. On the other hand, Defendants provide medical records and a sworn affidavit detailing the particular injuries that were asked about as well as Benoit's note that Plaintiff "denied any other significant [prior medical history]." (Rec. Doc. 33-4).

Plaintiff's final argument is that he subjectively believed he did not have any significant past medical history because he was not experiencing any ailments on the day of the exam. Plaintiff relies heavily on the fact that he excelled in his pre-employment physical examinations and the Functional Capacity Examination. He also argues that while he had been seen irregularly for generalized back, neck, and shoulder soreness, none of these visits resulted in surgery recommendations. However, this Court has previously noted that the intentional concealment prong "neither turns on credibility nor requires a subjective determination." *Hardison v. Abdon Callais Offshore, LLC*, No. 11-2053 (E.D. La. 2012), 2012 WL 2878636 (citing *Brown*, 410 F.3d at 175). Rather, the inquiry is essentially objective. Therefore, failing to disclose medical information in an interview that is designed to elicit such information is enough to meet the "intentional concealment" prong. *Id.* (citing *Brown*, 410 F.3d at 174).

The record reveals that Plaintiff had pre-existing medical conditions and concealed such conditions during the hiring process. The Court finds that Plaintiff intentionally concealed medical information from his employer during the hiring process.

2. Materiality

Defendants contend that Plaintiff's misrepresentations were material to his hiring decision. According to the Fifth Circuit, "[t]he fact that an employer asks a specific medical question on an application, and that inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purposes of the analysis." *Brown*, 410 F.3d at 175.

According to the affidavit of Ed Devoltz, QHSE (quality, health, safety, and environment) Specialist for Schlumberger, the company "has a strict hiring policy that only those individuals who are capable of unrestricted full-duty capacity can be considered for such employment." (Rec. Doc. 33-4, p. 87). Devoltz also states that "if the company was aware of any individual who had been undergoing medical treatment for any back, neck, and/or other spinal condition for a period of several years, then the company would not consider that individual eligible for offshore duty." *Id.*

Plaintiff relies heavily on the fact that he passed all physical tests on the day of the examination. This argument is irrelevant. The Fifth Circuit discredited the same argument in *Brown* when the Plaintiff in that case argued that his concealment was not material because he could perform heavy labor tasks for his first few months on the job. *Brown*, 410 F.3d at 175. Schlumberger based its hiring decision (at least, in part) upon whether the applicant had significant previous medical issues, not solely on whether the applicant could complete difficult manual labor tasks at the time of hiring. *Id.*

7

The Court finds that the second factor of the *McCorpen* test is met. Plaintiff's history of medically-treated physical ailments are rationally related to his physical ability to perform his job duties. Moreover, Plaintiff's truthful disclosure of his pre-existing conditions would have materially affected Defendant's decision to hire him.

### 3. Connection Between Injuries

The final requirement under the *McCorpen* defense involves the connection between the withheld medical information and the injury that is eventually sustained. *Brown*, 410 F.3d at 175. In establishing the requisite causal relationship, "there is no requirement that a present injury be identical to a previous injury. All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage." *Id.* at 176.

To assess the connection between injuries, the Court must first analyze which conditions existed before the accident. Medical records show that Plaintiff suffered "significant left AC joint arthritis and inflammation" on June 17, 2013, which resulted in an injection to his left shoulder. (Rec. Doc. 33-4, p. 42). Additional medical records show that on October 21, 2013, Plaintiff was suffering from a "one-year history of neck pain as well as some interscapular pain and numbness in his left arm." (Rec. Doc. 33-4, p. 43). Moreover, the deposition of Dr. Rahul Vohra, one of Plaintiff's treating physicians, shows that Plaintiff had been treated for neck pain since 2010. (Rec. Doc. 33-4). Dr. Vohra's deposition also noted that Plaintiff's neck, back, and shoulder pains had been progressively worsening at the time Dr. Vohras met with Plaintiff in October of 2013. *Id.*

Plaintiff alleges the accident aboard the Deepwater Champion resulted in injuries to two different body parts. He claims to have suffered an injury to his neck and a torn rotator cuff in his left shoulder. (Rec. Doc. 33-4, pp. 3-18). Plaintiff contends that the shoulder ailments he suffered before starting with Schlumberger have no causal connection with the torn rotator cuff caused by

8

the alleged accident. The Court disagrees. Plaintiff argues that there is no causal connection between his pre-employment shoulder injuries and his post-accident shoulder injuries because "[Plaintiff] had never suffered a torn rotator cuff prior to the injury on the rig." (Rec. Doc. 35, p. 18). However, the law does not require that the pre-accident injuries and the post-accident injuries mirror each other. Such a standard would be impracticable. The law only requires that "the previous injury and the new injury occurred in the same location on the body." *Brown*, 410 F.3d at 176.

The same is true of Plaintiff's neck injury. Medical records specifically show that Plaintiff complained of and was being treated for neck pains approximately two weeks before he was hired. Moreover, Dr. Vohra specifically noted that Plaintiff visited his office on October 21, 2013 complaining of "a one-year history of neck pain." (Rec. Doc. 33-4, p. 13). Therefore, a connection exists between Plaintiff's concealed medical information and the neck and shoulder injuries that the Plaintiff sustained during the alleged accident. Accordingly, this Court finds that the third *McCorpen* prong is satisfied by the neck and shoulder injuries pre-existing Plaintiff's employment with Schlumberger.

**IV.** Conclusion

Defendants have mounted a successful *McCorpen* defense. The Court finds that Plaintiff intended to conceal his medical conditions, that the concealed medical conditions were material to Schlumberger's decision to hire Plaintiff, and that a connection existed between the withheld medical information and the injury complained of in the lawsuit.

Accordingly;

**IT IS ORDERED** that Defendant's **Motion for Partial Summary Judgment (Rec. Doc. 33)** is hereby **GRANTED.** Defendant may cease maintenance payments to Plaintiff.

**IT IS FURTHER ORDERED** that Plaintiff's claims, including punitive damages, and attorney's fees related to his claims for maintenance and cure benefits are **DISMISSED WITH PREJUDICE.**

October 2, 2017

                                               JUDGE JAY C. ZAINEY
                                              UNITED STATES DISTRICT JUDGE